UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONAH GORE,

        Plaintiff,

   v.

SANOFI-AVENTIS U.S. L.L.C., et al.,

        Defendants.

Case No. 1:23-cv-716

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

A slew of litigants across the country have sued Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively Sanofi) over hair loss caused as a side-effect using the chemotherapy drug, Taxotere (docetaxel). *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 2:16-md-2740 (E.D. La. Oct. 4, 2016). Plaintiff Donah Gore's case before this Court is one such suit. *See Gore v. Sanofi S.A.*, No. 2:17-cv-16381 (E.D. La. Dec. 9, 2017). As part of the multidistrict litigation (MDL) process, this matter had previously been consolidated with similar suits before Judge Milazzo of the United States District Court for the Eastern District of Louisiana for nearly six years. Following significant pretrial case management and discovery, on November 1, 2023, Judge Milazzo transferred individual cases to the districts in which they were (or, sans the ongoing MDL, would have been) filed for judges in those districts, like the undersigned, to preside over the remainder of the case. (Doc. 8).

Gore has since moved to amend her pleadings. (Doc. 21). But as explained below, because Judge Milazzo previously rejected some of Gore's amendments, and

because Gore could have raised others (but failed to do so) in accordance with the MDL pretrial scheduling orders, she does not merit leave to amend. Accordingly, the Court **DENIES** Plaintiff's Motion for Leave to Amend Complaint (Doc. 21).

## BACKGROUND

Gore's case is governed by the September 27, 2018, Second Amended Master Long Form Complaint (LFC), (Doc. 7-4, #2079–146), and her December 9, 2017, Amended Short Form Complaint (SFC), (Doc. 1). (Doc. 8, at p. 75;[1] Doc. 21[2]). Based on these governing pleadings, Gore generally alleges that after consuming Taxotere (or a form of it), she suffered permanent hair loss and associated mental anguish for which she seeks damages under several common law tort theories (i.e., she raises claims for strict products liability, negligence, negligent and fraudulent misrepresentation, fraudulent concealment, and fraud and deceit). (Doc. 1).

Though now docketed here, Gore filed her suit on December 9, 2017, in the Eastern District of Louisiana as part of the ongoing MDL that had consolidated many cases alleging similar harms and theories of liability against Sanofi and other pharmaceutical defendants. *In re Taxotere (Docetaxel) Prod. Liab. Litig.* (*JPML Order*), 220 F. Supp. 3d 1360 (J.P.M.L. 2016). Gore's case resided there for the nearly

---

[1] Because the header from this Court's filing system is superimposed on the prior header that had been added when the document was docketed in the Eastern District of Louisiana, the PAGEID number is illegible. As a result, when citing docket entry 8, the Court reports the page number listed at the bottom of the document which corresponds to the page number of the PDF.

[2] Because of a glitch in the Court's filing system, there are no PAGEID numbers listed for docket entry 21 or its attachments. So when the Court needs to refer to a specific pin cite for these entries, it will use the page number listed at the bottom of the relevant docket entries.

2

six years of pretrial proceedings and discovery related to the common factual and legal questions governing the MDL plaintiffs' suits. (Doc. 8, at p. 2). To facilitate those proceedings, the MDL judge appointed a steering committee to represent the MDL plaintiffs, including Gore, for generally applicable pretrial and discovery matters. (*Id.* at p. 77). Beyond the parties' significant pretrial discovery, the MDL judge also presided over two bellwether trials during that six-year process. (*Id.* at p. 2). On October 23, 2023, the MDL judge concluded that consolidation no longer served the parties' interests and transferred the remaining individual cases to the local dockets of the districts where they were filed or, like Gore's case, in which they would have been filed absent the preexisting MDL. (Doc. 8).

Following this case's transfer to this Court, the Court entered a calendar order setting forth the remaining deadlines for individualized discovery pertaining just to Gore. (Doc. 20). Gore then moved for leave to amend the governing LFC and her initial SFC to make several significant modifications.[3] (Doc. 21; Doc. 21-2).

The proposed changes are numerous, so the Court merely summarizes them. They generally fall into five categories. First, Gore proposes to delete allegations applicable to defendants who are not parties here. (*See* Doc. 22-2). Second, she adds allegations chronicling Taxotere's approval and labeling, Sanofi's actions purportedly concealing the adverse effects of the drug by referring to (unattached) social media

---

[3] Gore's motion states that "this Court ordered Plaintiff to file a motion for leave to amend her complaint by February 16, 2024." (Doc. 21-1, at p. 3). To ensure that there is no misunderstanding about what occurred, the Court takes occasion to clarify that all it did was enter a calendar order *permitting* (but not mandating) any motion for leave to amend to be filed by that date. (Doc. 20).

3

posts by unnamed third parties, as well as how the scientific community purportedly established a connection between consumption of Taxotere and hair loss. (Doc. 21-2 ¶¶ 26–27, 37–42, 53–54, 55–56, 58–61, 64, 70–73, 81, 89–90, 139–48, at pp. 5–8, 12–17, 19, 21, 34–35). Third, she proposes to alter the definition of "Permanent Chemotherapy Induced Alopecia" from the definition that had governed all MDL cases from its inception. (*Id.* ¶¶ 100–06, at pp. 23–25). Fourth, Gore seeks to add personal (but non-specific and conclusory) allegations about her lack of awareness of this purported connection between Taxotere and permanent hair loss—which allegations largely parrot the elements of fraud and misrepresentation claims. (*Id.* ¶¶ 156–161, 182–83, 186, 188–201, 206, 210, 221, 238, 244, at pp. 37–38, 41–46, 48, 51–52). And finally, in her proposed amended complaint, Gore seeks to modify the claims raised. She purports to reallege the two generic products liability claims using the applicable verbiage of the corresponding Ohio causes of action. (*Id.* ¶¶ 162–78, at pp. 38–40). And she then seeks to drop the form negligence, fraudulent concealment, and breach-of-express-warranty claims that had been raised in the LFC before the MDL court (of which she had raised only the negligence and fraudulent concealment claims in her SFC, (Doc. 1, #4)), (*see* Doc. 7-4, #2128–30, 2134–36, 2142–43).

In support of her motion, Gore (1) states she never had the ability to amend her complaint to state these allegations before the MDL judge, (Doc. 21-1, at p. 4), (2) contends that Sanofi will not suffer any prejudice from these amendments, (*id.* at pp. 4–5), and (3) cites several cases for the proposition that courts often permit amendments after MDL cases are returned to their local dockets, (*id.* at pp. 3–5).

4

Sanofi responded in opposition. (Doc. 22). It argues that despite Gore's representations to the contrary, everything she now seeks to do has either already been rejected by the MDL judge or could have been done during the MDL proceedings. (*Id.* at #459–60). In particular, Sanofi emphasizes that the MDL judge expressly rejected—in 2019, no less—an attempt by the steering committee to modify the definition of "Permanent Chemotherapy Induced Alopecia" in the exact manner as Gore seeks to do in her proposed amended complaint.[4] (Doc. 22, #459 (citing Doc. 7-4, #3162–66); *compare* (Doc. 7-4 ¶ 194, #2195), *with* (Doc. 21-2 ¶ 101, at p. 24)). And it notes that the MDL judge also rejected a similar attempt by specific plaintiffs who sought an end run around that ruling by amending their personal SFCs to utilize the modified definition of "Permanent Chemotherapy Induced Alopecia." (Doc. 22, #459 (citing Doc. 7-4, #3170 ("For the reasons explained in the Court's order denying th[e] [motion to file a third amended master complaint], the Court will not allow Plaintiffs to alter allegations in their Short-Form Complaints to parallel the proposed Long-Form Complaint."))). Sanofi also contends that the MDL judge set specific scheduling orders to permit Gore (and other MDL plaintiffs like her) to amend her (their) SFC(s)

---

[4] In fact, a comparison of the proposed third amended master complaint and Gore's proposed amended complaint reveals that they are, in effect, the same. Yes, there are some changes: Gore (1) drops allegations about parties she did not sue, (2) changes "Plaintiffs" to "Plaintiff" throughout, (3) adds six paragraphs of allegations specific to her, and (4) includes allegations that this Court has jurisdiction over the claims and that venue is proper. But beyond those tweaks, Gore simply copied the substantive allegations of the proposed third amended master complaint with only minor stylistic changes and some reordering of the allegations. The Court is troubled by Gore's attorneys' failure to identify that the MDL court denied the steering committee's motion to file a materially similar complaint (in the sense that most of the major substantive allegations are nearly identical in all relevant respects). Attorneys have a duty of candor to the Court, and this omission flirts with the line separating proper conduct from that which is not, especially considering the MDL court's rulings on such allegations means this Court is not starting from a blank slate when reviewing her motion.

5

to allege facts specific to her (their) individual claims, but that she did not do so. (*Id.* at #459–60 (citing Pretrial Order 105 (PTO 105), Doc. 7-2, #1154–55)). And it concludes by citing several district courts across the country that have rejected nearly identical motions in matters previously consolidated as part of this MDL process by applying the MDL judge's rulings identified above. (Doc. 22, #463 n.5 (citing Docs. 22-3 to -10, 22-15 to -18)).

Gore never filed a reply. As the time to do so has passed, the motion is ripe for review. *Morgeson v. Freeman*, No. 1:23-cv-269, 2024 WL 1406105, at *2 (S.D. Ohio Apr. 2, 2024) (citing *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 935 n.4 (6th Cir. 2004)).

## LAW AND ANALYSIS

As explained below, the Court finds that Gore's motion lacks merit. But to explain why, the Court reviews the proposed amendments in three distinct buckets: non-material changes, changes barred by law of the case, and changes barred by Federal Rule of Civil Procedure 16(b). Each are addressed in turn.

### A. Changes that Do Not Affect the Court's Analysis

As noted, the first group involves proposed changes Gore seeks to make that have no material effect on the Court's analysis as to whether amendment is proper. These changes include (1) Gore's dropping allegations from the LFC that relate to defendants she has not sued, and the breach-of-warranty claim she did not bring, as well as (2) her realleging the products liability causes of action under Ohio law (to the extent that she does not propose to add new factual details). The former has no impact because that Gore had not sued those defendants or raised that particular claim

already means the corresponding allegations in the LFC (which governed all consolidated cases in the MDL) simply do not apply here. The latter does not impact the Court's analysis because to the extent that the LFC raised common-law claims, the Court, not Gore, is tasked with establishing the governing law for those claims: "choice of law … is not a pleading requirement." *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *6 (S.D. Ohio May 8, 2024). So this first set of proposed changes are not material and cannot impact the Court's analysis.

**B. Law of the Case**

The second group applies to allegations Gore proposes to add, but that the MDL judge has already addressed. In particular, the Court refers to Gore's proposed allegations seeking to redefine "Permanent Chemotherapy Induced Alopecia" from alopecia that persists for six months after chemotherapy to a vague suggestion that there is no universal time frame for how long alopecia must persist after chemotherapy before the condition constitutes "Permanent Chemotherapy Induced Alopecia." (*Compare* Doc. 7-4 ¶ 181, #2114–15, *with* Doc. 21-1 ¶¶ 101–02, at p. 24). Put differently, Gore wants to redefine her injury from the well-defined and easily verifiable six-month rule to an amorphous standard that varies from patient to patient. The MDL judge addressed this issue directly in its December 11, 2019, decision under Rule 15(a)(2):

> The parties and the Court have been operating under Plaintiffs' original definition of their alleged injury since Plaintiffs adopted it in their original master complaint filed on March 31, 2017. … By redefining the injury[,] … Plaintiffs would not only delay the start of prescription but also require Defendants to defend against the application contra non valentem based on Sanofi's alleged fraudulent concealment. This Court

7

> will not allow Plaintiffs to make these unduly belated amendments that would cause serious prejudice to Defendants. Presumably, Plaintiffs made an informed decision to define their injury the way they originally did. The Court will not allow Plaintiffs at this point in the MDL to backtrack on that decision.

(Doc. 7-4, #3164–66). The Sixth Circuit has recognized that "a transferee judge [in the MDL context] ought as a practical matter to accord considerable deference to the judgment of the transferor court," essentially as law of the case. *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 120 (6th Cir. 1981). True, these prior decisions to which the Court should defer are not unassailable. *Id.* But to have the Court revisit the matter anew, the party challenging such decisions must either present new evidence, identify a change in controlling law, or identify clear error that would work manifest injustice. *Antalocy v. Sanofi US Servs. Inc.*, No. 4:23-cv-2098, 2024 WL 1328570, at *4 (N.D. Ohio Mar. 28, 2024).

Gore makes no showing on any of these fronts. In fact, she fails to acknowledge that the MDL court even addressed these proposed amendments. (*See* Doc. 21-1). So she has not met her burden of explaining why law of the case should not apply.

But even addressing the issue on the merits, the Court sees no reason to revisit the MDL judge's ruling expressly rejecting the modified definition of "Permanent Chemotherapy Induced Alopecia" Gore now proposes. For starters, the MDL judge reviewed the applicable Rule 15(a)(2) caselaw and considered whether the proposed amendments should be permitted twice—once when they were proposed as amendments to the LFC, (Doc. 7-4, #3164–66), and the second time when they were proposed as amendments to individual SFCs, (*id.* at #3170)). So it is not as though Gore's request is the first attempt to analyze, let alone to revisit, the issue.

8

And the Court sees no error, let alone clear error, in the MDL judge's holding that Gore's new definition of her injury would meaningfully alter the course of the litigation, especially given the prior definition has been in use for over seven years in this matter. (*Id.* at #3164–65). This follows from the fact that the change in how Gore's injury is defined would impact a lot of Sanofi's pretrial discovery work, which, for example, included specific analyses of clinical trials which employed the six-month definition of "Permanent Chemotherapy Induced Alopecia." (*Id.* at #3165 (citing expert reports from Plaintiffs and Defendants that expressly adopted this definition)). So while Gore claims the new definition would not prejudice Sanofi, (Doc. 21-1, at pp. 4–5), she fails to appreciate that how her injury is defined influences each element of her claim. That is presumably what led to the MDL judge's observation that Sanofi "would undoubtedly want to revise certain expert reports and [to] conduct supplemental depositions" in light of such a change. (Doc. 7-4, #3165). This Court agrees with the MDL judge that a change to the definition of Gore's injury now would cause Sanofi significant prejudice. In other words, disturbing this prior ruling would create manifest injustice, not the other way around.

So the Court concludes that the considerable deference it owes to the MDL judge's prior rulings requires the same result that the MDL judge reached twice before: a denial of Gore's request to redefine her alleged injury. *Antalocy*, 2024 WL 1328570, at *5 (collecting cases in Sixth Circuit district courts reaching the same result in companion cases also spun out from the same Taxotere MDL).

9

**C.     Federal Rule of Civil Procedure 16**

The last bucket of changes—Gore's additional allegations about Taxotere's labeling and marketing, the public information allegedly connecting the drug to hair loss, and her personal awareness of these alleged harms, which all address the fraud and misrepresentation claims and implicate the applicable statutes of limitations—are governed by Federal Rules of Civil Procedure 15 and 16. Federal Rule of Civil Procedure 15 sets the overall standard for a party's request to amend his pleadings. Under Rule 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." "But if the deadline for amending the pleadings set out in a Rule 16 scheduling order has passed, the movant must first show good cause for failing to meet the deadline under Rule 16(b), before the Court considers the propriety of leave to amend under Rule 15(a)." *Hearn v. Dick's Sporting Goods, Inc.*, No. 1:22-cv-329, 2023 WL 7298616, at *2 (S.D. Ohio Nov. 6, 2023). To establish good cause, he must show that "despite [his] diligence [he] could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). The Court also evaluates "whether the opposing party will suffer prejudice" when engaging in this analysis. *Id.* at 906.

Here, the MDL judge via PTO 105, issued on May 11, 2020, set a clear deadline for Gore to amend her SFC to add the exact allegations she now wishes to pursue. It required all Plaintiffs, which necessarily included Gore, to file amendments "add[ing] factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." (Doc. 7-2, #1154). The steering committee and Sanofi stipulated to an extension of PTO 105's deadline until January 15, 2021, which

10

stipulation also permitted all Plaintiffs, including Gore, to seek the MDL judge's ruling on specific allegations claimed to deviate from PTO 105 or alleged to "have previously been disallowed by the Court." (*Id.* at #1156–57). In other words, Gore had avenues to add the allegations she now seeks to include in her proposed amended complaint. To the extent that they relate directly to details about her "medical care" and "communications with medical professionals," PTO 105 authorized such changes, so long as they were made before January 15, 2021. (*See* Doc. 21-2 ¶¶ 156–61, at pp. 37–38 (discussing Gore's chemotherapy treatment, information Gore received as part of this treatment, and what treatment decisions she would have made had she been fully informed of all the risks she alleges Taxotere causes)). And the other allegations[5] falling outside PTO 105's authorized scope could have been raised for the MDL judge's review via the parties' agreed-to "call docket" procedure.[6] (Doc. 7-2, #1162–64).

Gore never moved to amend her SFC during that timeline, which means her current motion for leave to amend also implicitly requests that the Court modify the

---

[5] For example, Gore's proposed allegations expanding on Taxotere's labeling and Sanofi's awareness of the alleged connection between the drug and hair loss that parallel those allegations the MDL judge rejected when denying the proposed third amended master complaint. *See supra* Part B & note 4.

[6] The "call docket" procedure allowed the MDL judge to ensure the myriad of litigants followed its pretrial orders. *See generally* Margaret S. Williams, et al., *Plaintiff Fact Sheets in Multidistrict Litigation Proceedings: A Guide for Transferee Judges*, Fed. Jud. Ctr. & J.P.M.L 12–13 (1st ed. 2019) (discussing the Taxotere MDL's call-docket procedure). Sanofi (or another MDL defendant) could identify a deficiency in proposed amendments, meet and confer with the plaintiff in question to explain the reasons the proposed amendments were noncompliant, and then place his case on a "call docket" if the plaintiff persisted in such non-compliance. (Doc. 7-2, #1162–63). The list of cases on that docket would be published with a date and time for the parties to appear before the MDL judge. (*Id.* at #1164). At that conference, the plaintiff had an opportunity to show cause why his proposed amendments complied with the MDL judge's orders, at which time the MDL judge would rule on whether the plaintiff could proceed to add such amendments to his pleadings. (*Id.*).

11

prior deadline. (Doc. 8, at p. 76 ("All deadlines for Plaintiffs to amend their individual complaints without leave of court have passed.")). But to merit such an amendment to the pretrial calendar, Gore must show good cause for her failure to comply with this original deadline. Gore has made no such showing. Yes, she claims she has not been afforded the ability to amend her SFC, except for those amendments allowed by PTO 105. (Doc. 21-1, at p. 4). But as explained above, those personal and specific allegations Gore now proposes are exactly what PTO 105 contemplates.[7] *Antalocy*, 2024 WL 1328570, at *6 (noting the same and citing other Taxotere MDL cases finding similarly). Furthermore, Gore's amendments, particularly those unique to her, are not details that she had to wait for discovery post the January 2021 deadline to obtain. She knew of her personal allegations well before she filed this suit. And the allegations she otherwise lifted from the proposed third amended master complaint existed since late 2019 when the steering committee moved to file that version of the master complaint. As a result, the Court finds that Gore does not merit leave to amend—the record does not reveal any cause, let alone good cause, for her delay.

Furthermore, the prejudice Sanofi would face confirms this holding. *See supra* Part B. As noted previously, Gore insists that Sanofi will not face unfair prejudice. (Doc. 21-1, at pp. 4–5). But having addressed this point above when applying the MDL judge's prior rulings, the Court need not tarry long in addressing it here. The central

---

[7] Given Gore could have added these allegations consistent with PTO 105, the Court finds no merit in her assertion (belied by the record) that "PTO 105 unnecessarily and improperly limited the ability of Plaintiff to allege case specific facts." (Doc. 21-1, at p. 3).

12

problem with Gore's claim for a lack of prejudice is that she misunderstands the pretrial MDL process, which causes her to ignore the key effects of her delay.

For example, Gore asserts that Sanofi cannot face prejudice because it has not yet answered her specific SFC. (Doc. 21-1, at p. 4). But that overlooks the role of Sanofi's master answer—the master answer, which responds to all MDL plaintiffs' allegations in one fell swoop, (Doc. 7-2, #1003 ("Defendant shall be deemed to have answered all cases pending in, filed in, or subsequently transferred to the MDL upon filing of a Master Answer.")), avoids significant duplication of work and serves as an efficient, time-saving case-management device. Namely, by allowing Sanofi to file one responsive pleading that applies to all complaints, Sanofi avoids the inherent pretrial delays that would occur had it needed to review individualized complaints with the many variations a plaintiff could employ to allege the tort claims at issue here. *See JPML Order*, 220 F. Supp. 3d at 1361 (stating the MDL's purpose is to "eliminate duplicative discovery; [to] prevent inconsistent pretrial rulings; and [to] conserve the resources of the parties, their counsel, and the judiciary"). The long- and short- form complaint procedures simply streamline the pleading process via needed uniformity. It does not matter that Gore's case is no longer consolidated. To permit her to bypass that process now would open the door for all transferee courts to do so. As that would amount to transferee courts' unwinding an MDL's uniform pretrial process by authorizing individualized procedures ex post, there would be little point to sending a case to an MDL in the first place. *Kreglow v. Sanofi-Aventis U.S. LLC*, No. 3:23-cv-

13

2173, 2024 WL 1742379, at *6 (N.D. Ohio Apr. 23, 2024) ("[A]llowing [plaintiff] to amend at this stage would nullify the work of the MDL Court." (citation omitted)).

Simply, the prejudice wrought by Gore's amending her complaint at this point in time would be significant—it impacts not only Sanofi, but others as well given her request would undermine the MDL process generally. And, as explained above, the prejudice specific to this case is clear. Any modification to Gore's pleadings at this stage that would tend to alter the theory of liability (such as her allegations about the timing of Sanofi's purported awareness of the alleged connection between Taxotere and permanent hair loss) would disturb several pretrial rulings and materially affect the pretrial discovery already completed. *Antalocy*, 2024 WL 1328570, at *7 ("Many of the MDL court's pretrial rulings concerned the statute of limitations, an issue [plaintiff's] proposed amendments would directly affect."); *see also supra* Part B & note 4. Those harms are palpable, which solidifies the Court's conclusion that Gore cannot show cause, let alone good cause under Rule 16, justifying her (unexplained) failure to meet the MDL judge's pretrial deadline for such amendments that predates Gore's motion by over three years.[8] *Cf. Hearn*, 2023 WL 7298616, at *4 (noting that even under the liberal pleading standard in Rule 15, undue delay and prejudice are factors that weigh against granting a plaintiff leave to

---

[8] For this reason, it does not matter that Gore cites cases she claims hold that amendments can occur once an MDL court returns a case to its local docket. (Doc. 21-1, at pp. 3–4). That amended pleadings can occur does not answer whether Gore has shown that amendment is warranted in this specific case. *Cf. Andreae v. Cap. One*, No. 1:22-cv-618, 2024 WL 1579914, at *5 (S.D. Ohio Apr. 11, 2024) ("But finding that Capital One *can* waive the [applicable statutory] provisions does not answer the separate question whether Andreae has validly alleged that Capital One *did* implicitly waive them here.").

14

amend). So while some discovery specific to Gore may be left, amendment is not proper this late in the game.[9]

## CONCLUSION

Altogether, the Court finds that Gore's tardy motion for leave to amend filed *after* the MDL court already barred these amendments and *after* pretrial discovery process has occurred does not have merit. The motion would effectively upend the entire MDL process. And Gore has made no showing why she could not have raised many of these allegations at an earlier date in accordance with the MDL judge's scheduling orders. Gore's deficient showing and the procedural costs mean that "justice [does not] so require[]" amendment. Fed. R. Civ. P. 15(a)(2). Accordingly, and in line with other courts dealing with similar amendments by Taxotere plaintiffs, the Court **DENIES** Plaintiff's Motion for Leave to Amend Complaint (Doc. 21).

    **SO ORDERED.**

July 24, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[9] One final observation. Gore appears to want to drop the negligence and fraudulent concealment claims she initially raised in her SFC. (*Compare* Doc. 1, #4, *with* Doc. 21-2, at pp. 38–52). At first blush, it seems passing odd that Sanofi would object to her decision no longer to pursue two claims against it. But were Gore permitted to amend her pleadings and to shed these claims, she would effectively have obtained, sub silentio, their dismissal *without prejudice*. Considering the extensive pretrial work and discovery that has occurred, it makes sense that Sanofi would want to ensure that any claims dismissed from the suit are dismissed *with prejudice*, rather than impliedly without.